## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARK GOLDSTEIN, on behalf of himself and all others similarly situated, | Civil Action No. ____ |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | (Jury Trial Demanded) |
| RTX CORPORATION (f/k/a Raytheon Technologies Corporation), | |
| Defendant. | |

Plaintiff Mark H. Goldstein, on behalf of himself and other similarly situated individuals, by and through his attorneys, alleges as follows:

## <u>INTRODUCTION</u>

1.      This is a collective and class action brought by Plaintiff Mark H. Goldstein ("Mr. Goldstein"), on behalf of himself and all others similarly situated alleging that Defendant RTX Corporation, formerly Raytheon Technologies Corporation ("Raytheon" or "RTX"), violated the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 *et seq.*, ("ADEA"), the Massachusetts Fair Employment Practices Act, Mass. Gen. Laws ch. 151B, § 4, *et seq.* ("MFEPA" or "151B"), and the Virginia Human Rights Act, Va. Code Ann § 2.2-3900 *et seq.* ("VHRA") through its nationwide pattern, practice, and/or policy of discriminating against older workers (defined as those who are 40 years old or older) in its hiring processes.

2.      Raytheon is one of the world's largest aerospace and defense companies, with over 185,000 employees worldwide and approximately $69 billion in revenues in 2023. Raytheon prides itself on attracting and retaining younger workers. Raytheon publicly touts to prospective investors its efforts to build a youthful talent pipeline, including by focusing on "early career hiring."

3.      In furtherance of Raytheon's goal of hiring younger workers, Raytheon reserves many positions at the company *exclusively* for recent college graduates, *i.e.*, applicants who have graduated in the prior year or two (or have yet to graduate) or applicants who have a college degree and less than 12 or 24 months of relevant work experience ("recent college graduates"). Raytheon's recent college graduate hiring requirement intentionally and effectively excludes nearly all older workers[1] from qualifying for, competing for, and obtaining many jobs at Raytheon. And Raytheon routinely publishes job postings for numerous jobs where the only basic qualification is being a recent college graduate and where Raytheon unlawfully indicates a preference for younger workers and discrimination against older workers and deters older workers from applying.

4.      Despite an ongoing labor shortage since at least 2020, a documented need for qualified employees, and a finding from the Equal Employment Opportunity Commission ("EEOC") in 2021 that Raytheon's recent college graduation hiring practices violate the federal Age Discrimination in Employment Act, Raytheon has continued to reject and deter qualified older applicants for many positions simply because they are not recent college graduates.

5.      Raytheon's efforts to cultivate a younger workforce have proven successful. In May 2023, the Company's former global head of talent acquisition noted that roughly 25% of all new hires were new or recent college graduates, a share that has grown in recent years.[2] And through Raytheon's recent college graduate hiring practices and advertisements described herein, the vast majority of employees hired for many positions at Raytheon have been younger workers.

---

[1] As used in this Complaint, "older workers" refers to workers who are 40 years of age or older.

[2] *See* Jennifer Liu, *The top 10 buzziest companies Gen Z wants to work for—none of them are in Big Tech, says new report*, CNBC (May 1, 2023), https://www.cnbc.com/2023/05/01/top-10-buzziest-companies-gen-z-wants-to-work-fornone-are-big-tech.html#:~:text=Raytheon%20is%20the%20biggest%20employer,that's%20grown%20in%20recent%20years.

6.      Raytheon makes its preference for younger workers known at the very outset of the hiring process through exclusionary language and eligibility requirements in certain job advertisements. Many Raytheon job ads use targeted phrases such as "recent college graduate," "new college graduate," "new graduate," or "recent graduate" in the position's title and/or job description and qualifications to disqualify older applicants or deter older applicants from applying.

7.      These and other job postings for positions at Raytheon often require applicants to have less than one or two years of experience to meet the "basic qualifications" for the job or to have graduated from college or graduate school within a recent time period, and they often require applicants to provide a copy of their most recent college transcript and to list their month and year of college graduation. Such job postings for U.S.-based, non-internship positions requiring or preferring a recent graduation date and/or setting a restrictive maximum period of work experience (*e.g.*, no more than 12 to 24 months of relevant work experience) are referred to as "Recent Graduate Positions" throughout this Complaint.

8.      The language and content of these job advertisements discourages and deters many older workers from even applying for the Recent Graduate Positions and prevents older workers who do apply from advancing in the hiring process because too much time has passed since they graduated from college and/or entered the workforce for them to meet the "basic qualifications" of these jobs. In other words, even if older workers meet every other criterion for these positions, they are simply "too old" to meet the graduation date or work experience requirements for the positions.

9.      For Raytheon's Recent Graduate Positions, the vast majority of qualified older workers are categorically screened out by Raytheon solely based on their year of college graduation, which Raytheon requires to be provided with their applications, either by an automated system or by an employee who can easily estimate an applicant's age with such information.

10.     Raytheon's practices and policies intentionally favor younger applicants to the detriment of older workers for the Recent Graduate Positions. In addition, these practices and policies have a statistically significant disparate impact on older workers and they cannot be justified by a reasonable factor other than age and cannot be justified by business necessity. Raytheon has long known that the vast majority of recent college graduates are under the age of 40, that the vast majority of people who are 40 years or older are not recent graduates, and that people under 40 years old are far more likely than people who are 40 years or older to be recent graduates.

11.     Mr. Goldstein, who is 67 years old, is one of the many older workers adversely impacted by Raytheon's discriminatory practices with respect to Recent Graduate Positions. Since 2019, Mr. Goldstein has applied to numerous Recent Graduate Positions at Raytheon. For each position, Mr. Goldstein met all the qualifications, except he was not a recent college graduate and he did not have less than 12 or 24 months of relevant work experience. Despite the fact that Mr. Goldstein has been genuinely interested in a position with Raytheon, committed to relocating, if necessary, and has skills that Raytheon needs to address a years' long labor shortage, Raytheon has not hired Mr. Goldstein for any of the positions to which he applied, has never offered him an interview, and has failed to seriously consider Mr. Goldstein's applications based on his age.

12.     In response to Mr. Goldstein's 2019 discrimination charge filed with the EEOC, the EEOC issued a Final Determination Letter dated March 30, 2021, attached as Exhibit A to this Complaint. That Letter declared that the EEOC's "investigation revealed that [Mr. Goldstein] was denied the opportunity to be considered for the [Recent Graduate Positions] he had applied for *because of his age, and not because he did not meet the minimum qualifications required for the jobs*." Ex. A at 1 (emphasis added). It also found that Raytheon's discriminatory advertisements had violated the ADEA, explaining that:

> EEOC believes [*Raytheon's] job advertisements included language that violates the ADEA* in that it indicated a hiring preference for applicants who are not in the protected age group. As noted in 29 U.S.C. 623[e] 'When help wanted notices or advertisements contain any terms and phrases such as 'age 25 to 35,' 'young,' 'college student,' '*recent college graduate*,' . . . or others of a similar nature, such a term or phrase deters the employment of older persons and is a violation of the [ADEA].

*Id.* at 2 (emphasis added).

13.     Despite the EEOC's explicit finding of unlawful age discrimination over three years ago, Raytheon has continued, unabated, to publish discriminatory job advertisements and notices with the same offending language to the detriment of older workers, and to apply similarly discriminatory criterion that exclude the vast majority of older workers for Recent Graduate Positions. Indeed, postings for new college graduates and/or college graduates with less than one- or two-years' experience continue to appear on Raytheon's website and other job boards.

14.     Mr. Goldstein brings this action on behalf of himself and a collective and class of similarly situated older workers throughout the United States who (i) applied for and were denied, or were deterred from applying for, at least one Recent Graduate Position (*i.e.*, a U.S.-based non-internship position at Raytheon for which the basic qualifications included the requirement that the applicant recently graduated from college or graduate school, or is still in college or graduate school, or that the applicant had less than 24 months of work

## JURISDICTION AND VENUE

15.     The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 626(c), because this action asserts claims under the federal Age Discrimination in Employment Act.

16.     This Court has supplemental jurisdiction over the state anti-discrimination law claims under 28 U.S.C. § 1367, because they arise from a common nucleus of operative facts with the federal claims and are so related to the federal claims as to form part of the same case or controversy under Article III of the United States Constitution.

17.     This District has personal jurisdiction over Raytheon because the company does business in Massachusetts, Raytheon's corporate headquarters were in Massachusetts during most of the Relevant Time Period, Raytheon's nationwide employment decisions have been made in Massachusetts during the Relevant Time Period (including determining the hiring criterion, publishing employment notices and advertisements, and making hiring decisions), because Mr. Goldstein applied to at least one Recent Graduate Position based in Massachusetts, and because many of the acts complained of and giving rise to the claims alleged occurred in and emanated from Raytheon's headquarters and offices in this District.

18.     Venue is proper in this District under 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to the claims occurred in this District.

## INTRA-DISTRICT ASSIGNMENT

19.     Assignment of this case to the Eastern Division of this District is proper, because a substantial part of the events giving rise to the claims occurred in this District and because until at least June 2022, Raytheon was headquartered in Waltham, Massachusetts, in Middlesex County, which is located in the Eastern Division of this District. L.R. 40.1(d)(1)(C).  Raytheon maintains operations in this District today.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

20.     Mr. Goldstein exhausted his administrative remedies on behalf of himself and the collective and class he seeks to represent and has complied with all statutory prerequisites to bringing his ADEA claims.

21.     Mr. Goldstein initially filed a charge of discrimination against Raytheon with the EEOC on or about August 7, 2019, on behalf of himself and other similarly situated applicants ("First Charge"). In response to that First Charge, the EEOC issued a Final Determination Letter on March 30, 2021, which found that Raytheon's practices violated the ADEA. On April 9, 2021, the EEOC

issued and mailed a right to sue letter with respect to the First Charge that gave Mr. Goldstein 90 days from his receipt of the right to sue to file a lawsuit in a federal district court.

22.     On June 25, 2021, Mr. Goldstein entered into a tolling agreement with Raytheon, tolling the statute of limitations for age discrimination claims as of June 6, 2021 on behalf of Mr. Goldstein and "all other individuals nationwide who may have age discrimination claims against Raytheon under federal, state, or local laws related to Company's employment policies or practices regarding new or recent graduates. . . ."

23.     On July 11, 2023, Mr. Goldstein filed a second EEOC charge against Raytheon that asserted similar claims of age discrimination under the ADEA and state law on behalf of a nationwide collective and class ("Second Charge"). The filing of the Second Charge was permitted under the tolling agreement and did not cancel it.

24.     On May 7, 2024, Mr. Goldstein informed Raytheon that he was cancelling the tolling agreement.  In accordance with the terms of the tolling agreement, Mr. Goldstein gave Raytheon 30 days' notice of cancellation of the tolling agreement prior to filing this Complaint. Because Mr. Goldstein gave Raytheon notice that he was cancelling the tolling agreement on May 7, 2024, the tolling agreement tolled all of Mr. Goldstein's claims against Raytheon, including his claims under the First Charge, between June 6, 2021 and June 6, 2024.

25.     Pursuant to Mr. Goldstein's EEOC charges and the tolling agreement, Mr. Goldstein's claims on behalf of himself and other class and collective members timely challenge Raytheon's pattern or practice of age discrimination since at least October 11, 2018, which is 300 days prior to his First Charge filing on August 7, 2019. Accordingly, in this Complaint, Mr. Goldstein challenges Raytheon's pattern or practice of age discrimination with respect to the Recent Graduate Positions since October 11, 2018.

26.     More than 60 days have passed since Mr. Goldstein filed his amended Second Charge, which is the time that must elapse before a suit alleging violations of the ADEA can be filed in federal court. 29 U.S.C. § 626(d)(1).

27.     Mr. Goldstein's state law claims on behalf of a class of similarly situated individuals are also properly exhausted. Mr. Goldstein submitted his Second Charge to the Massachusetts Commission Against Discrimination ("MCAD") on or around June 13, 2023. More than 90 days has elapsed since Mr. Goldstein filed this charge with MCAD.  On April 23, 2024, Mr. Goldstein filed a notice of withdrawal with MCAD, which satisfies his obligations for administrative exhaustion in Massachusetts.

28.      Mr. Goldstein's Second Charge was also filed with the Virginia Office of Civil Rights ("OCR"). On July 11, 2023, Mr. Goldstein's counsel mailed the OCR a hard copy of the charge, which the OCR confirmed it had received. More than 180 days has elapsed since Mr. Goldstein's charge was filed with the OCR. Mr. Goldstein received a right to sue letter from the OCR on March 19, 2024, and filed this action within 90 days of receiving the right to sue from the OCR.

29.     Any and all other prerequisites to the filing of this suit have been met.

## PARTIES

30.     Plaintiff Mark Goldstein is an adult resident of the state of Virginia. Mr. Goldstein has approximately 40 years of experience in project management, cybersecurity, technology, risk management, security engineering, sales, marketing, engineering, business, and consulting, including for major private sector companies, such as Northern Telecom (later known as Nortel), America Online, and Websense. He also has experience as a contractor for the U.S. Department of Homeland Security. Mr. Goldstein previously held a federal government security clearance and has a Certified Information Security Systems Profession ("CISSP") certificate and a Certified Information Privacy Professional certificate. He was born in 1956 and is 67 years of age as of the

date of this filing. He earned a bachelor's degree in economics from American University in 1978, and a master's degree in business administration ("MBA") from American University in 1980. He is a citizen of the United States.

31.    Defendant Raytheon is a publicly-traded American corporation that provides aerospace and defense products and services to commercial, military, and government customers. Until approximately June 2022, Raytheon was headquartered in Waltham, Massachusetts, after which it moved its headquarters to Arlington, Virginia. Raytheon reported gross revenues of approximately $67.1 billion in 2023.[3] In April 2020, Raytheon merged with United Technologies Corporation to form Raytheon Technologies Corporation, which later changed its name to RTX Corporation. All references in this complaint to Raytheon are intended to include RTX Corporation, Raytheon Company, United Technologies Corporation, the divisions, parents, subsidiaries, or affiliates of those companies, and any related entities. Upon information and belief, at least tens of thousands of potential class and collective members have applied, attempted to apply, or have been interested in applying but were deterred from applying to Recent Graduate Positions during the Relevant Time Period.

32.    Raytheon maintains control, oversight, and direction over its employment and hiring practices.

33.    Raytheon rejected or refused to consider numerous applications from Mr. Goldstein and similarly situated older people for Recent Graduate Positions, with the intent and effect of denying Mr. Goldstein and other similarly situated older individuals' employment because of their age.

---

[3] RTX 2023 Annual Report (Mar. 11, 2024), https://investors.rtx.com/static-files/df427ff0-0a2e-4933-b550-c5e76de151bd.

## FACTUAL ALLEGATIONS

**Raytheon's Discriminatory Hiring Policies and Practices**

34.     Since at least October 2018, Raytheon has engaged in an ongoing pattern or practice of age discrimination in hiring for lower-level positions that disqualifies, rejects, deters, and harms older workers. Raytheon's pattern or practice focuses on requiring applicants to be recent college or graduate school graduates for them to qualify and be hired for numerous lower-level positions, either by requiring that the applicants graduated from college or graduate school within a specific recent time frame or that applicants with a college or graduate degree have less than 12 months or 24 months of work experience.

35.     As part of Raytheon's pattern or practice of age discrimination, Raytheon: (1) posts job advertisements with discriminatory language that indicates a preference or requirement for younger workers and discrimination against older workers, including by stating that many positions are exclusively for new or recent graduates or candidates with less than 12 or 24 months of work experience; (2) collects age-related data from applicants that allow Raytheon and/or individuals reviewing applications to easily estimate applicants' ages and prevent the applications of older workers from advancing in the hiring process and/or to reject applications on that basis; (3) uses applicant screening systems that screen out older workers based on their age, including based on their date of graduation and cumulative work experience; and (4) imposes limitations on the eligibility requirements for the Recent Graduate Positions that prevent older workers from being considered or hired for such positions.

36.     Raytheon ordinarily posts open positions at Raytheon on the company's career website, https://careers.rtx.com/global/en/, and on various other "job boards" like Indeed, Zip Recruiter, and Monster, which are commercial websites where employers post job openings and

recruit workers. Applicants who apply to Raytheon via Raytheon's career website must create a "portal account," which requires applicants, at minimum, to create a username and password. Through this career website, Raytheon maintains data and information on the workers who have searched and applied for positions at Raytheon and their respective applications.

37.     Raytheon's job postings and qualification standards for Recent Graduate Positions dramatically restrict the positions to workers who are under the age of 40. Those job postings indicate a clear preference for younger workers and discrimination against older workers by advertising the positions as jobs for recent or new college or graduate school graduates and by including limitations or qualifications based on an applicant's date of graduation and/or limited work experience. The Recent Graduate Position postings indicate this preference and restriction in the following ways, among others.

38.     First, many job postings for Recent Graduate Positions use the words "New Grad," "New Graduate," "Recent Grad," or similar language in the title of the position, making clear to potential applicants that the jobs are limited to recent or new graduates. For example, during the Relevant Time Period, Raytheon published job notices whose titles were the following: "Associate, System Engineer (New Graduate), Req. No. 01464198," "Systems Engineer I – New Grad-Onsite, Req. No. 01550545," and "Associate, Software Engineer (New Grad), Req. No. 01468255."

39.     Second, some of Raytheon's job postings for Recent Graduate Positions contain language that specifically indicates a preference for younger workers and specifically discourages older workers from applying for those jobs and redirects them to apply for a more limited set of jobs for older workers. For example, Raytheon's job posting titled "Proposal Analyst I (early 2021 Start), Req. No. 174644BR," stated, "***Great opportunity for current seniors in college or recent college graduates. If you are not a current college senior, or a recent college graduate, please visit our other

opportunities at our rtx.com/careers and apply!***"

40.     Third, Raytheon's job postings for Recent Graduate Positions expressly state eligibility requirements that indicate a preference for younger workers, namely that a "basic qualification" for the position is a bachelor's degree or graduate degree within a recent time frame, or a bachelor's degree and less than 12 or 24 months of relevant experience. Job postings for "Associate, System Engineer (New Graduate)," Req. No. 01464198, "Systems Engineer I – New Grad-Onsite," Req. No. 01550545 and "Associate, Software Engineer (New Grad)," Req. No. 01468255 are examples of this.

41.     Often, Raytheon's job postings for the Recent Graduate Positions utilize more than one of these practices, such as including "New Grad" in the title and then requiring that applicants with college or graduate school degrees cannot have more than 12 or 24 months of relevant experience.

42.     Raytheon is aware that its job postings and requirements for the Recent Graduate Positions unlawfully discriminate against older workers, indicate an unlawful preference for younger workers, and discourage older workers from applying for the jobs in violation of the ADEA and state law.

43.     In response to Mr. Goldstein's First Charge, the EEOC issued a final determination letter in 2021 informing Raytheon that the "EEOC believe [sic] [Raytheon's] job advertisements included language that violates the ADEA in that it indicated a hiring preference for applicants who are not in the protected age group. As noted in 29 U.S.C., Section 623[e]. 'When help wanted notices or advertisements contain any terms and phrases such as 'age 25 to 35,' 'young,' 'college student,' 'recent college graduate,' . . . or others of a similar nature, such a term or phrase deters the employment of older persons and is a violation of the [ADEA].'"

44.    But after receiving the EEOC's final determination in 2021, Raytheon did not stop imposing requirements or job notices that discriminate against older workers and deter older workers from applying for the Recent Graduate Positions. Although Raytheon shifted the language for certain advertisements in some respects, Raytheon has continued to effectively impose the same recent college graduation requirements by requiring applicants who are college or graduate school graduates to have less than 12 or 24 months of relevant experience to qualify for the Recent Graduate Positions.

45.    Since 2018, Raytheon's entire application process for the Recent Graduate Positions has been structured to deter older workers from applying for those positions, to exclude older workers from consideration or being hired, and to hire younger workers for those positions.

46.    At the outset of the hiring process, the language that Raytheon used in job postings for Recent Graduate Positions deters many older workers from even applying to the positions. Older workers who are not deterred by the job postings might still be deterred by additional practices implemented by Raytheon that severely disadvantage older applicants and indicate that Raytheon is looking to hire younger workers. For example, some of the Recent Graduate Positions require applicants to provide the month and year of their college or graduate school graduation and/or require the applicant to submit a transcript, underscoring that only a recent graduate will be considered or hired for the position. Indeed, many older workers may not even have copies of their transcripts or have the ability to obtain them.

47.    Next, nearly all older workers who apply for the Recent Graduate Positions are automatically screened out at an early stage of the hiring process and denied consideration. This is because the basic qualifications for many of the Recent Graduate Positions **require** the applicant to be a recent college or graduate school graduate or have less than 12 or 24 months of work experience, and the vast majority of recent graduates are under 40 years old. Because Raytheon requires

applicants to provide their month and year of graduation and work history, Raytheon easily estimates each applicant's age and work experience by manual review or through the use of automated screening systems, and then automatically rejects applicants who do not meet the requirements for date of graduation and/or limited work experience.[4]

48.    Older workers who are not automatically screened out by these practices are still very unlikely to be considered, interviewed, or hired by Raytheon for the Recent Graduate Positions because, again, they are too old to meet the recent college or graduate school graduate criterion or a post-graduate work experience limit, or because Raytheon is not interested in hiring older people for the Recent Graduate Positions. As a result, the vast majority of applicants whom Raytheon actively considered, interviewed, and/or hired for the Recent Graduate Positions have been under the age of 40.

49.    Raytheon's discriminatory practices bar or severely disadvantage older applicants in competing for the Recent Graduate Positions and disproportionately exclude them from being considered, interviewed, or hired for the Recent Graduate Positions.

50.    Raytheon has long known that the vast majority of recent college and graduate school graduates are under 40 years old. It is commonly understood and widely known that most recent college and graduate school graduates are younger than 40 and most often in their 20s.

51.    This common knowledge is substantiated by data, which was provided to Raytheon several years ago. During the EEOC proceeding on his First Charge in 2021, Mr. Goldstein provided the EEOC and Raytheon with statistical data collected by the National Center for Education Statistics reporting (in accordance with common knowledge) that the vast majority of college students are under 40 years old. According to that data, 95% of college graduates are under 40, 70% of graduates

---

[4] Raytheon, on occasion, sends prospective applicants automatic communications at various points in the application process, further demonstrating that Raytheon utilizes automated screening tools.

are 24 or younger at graduation, and only 4.8% of graduates are 40 or older. These statistics reveal that college graduates are *15 times more likely to be under 40 than age 40 or older*. And, again, since at least 2021 Raytheon has known about these statistics, which are consistent with the common understanding of the demographics of recent college graduates.

52.    Despite this data and the EEOC's clear finding that Raytheon's hiring practices violate the ADEA, Raytheon has continued to require that applicants for the Recent Graduate Positions be recent college or graduate school graduates and/or have less than 12 or 24 months of work experience, and has continued to publish advertisements for the Covered Positions with language indicating a preference for younger workers and discrimination against older workers.

53.    During the past several years, at any point in time, Raytheon has advertised jobs for dozens of Recent Graduate Positions that required the applicant to be a recent college or graduate school graduate or have less than 12 or 24 months of relevant work experience.

54.    For example, on May 30, 2024, Raytheon published a job posting for a Mechanical Engineer I (Onsite) with a salary range of $59,000 to $113,000, for which the only "Basic Qualifications" were U.S. citizenship and a "[b]achelor's degree and 12 months or less of relevant professional work experience (excluding internships)." Also on May 30, 2024, Raytheon published a job posting for a Manufacturing Engineer I (On-Site) with a salary range of $59,000 to $113,000, for which the only "Basic Qualifications" were U.S. citizenship, the ability to obtain and maintain ATF access, and a "[b]achelor's degree and 12 months or less of relevant professional work experience (excluding internships)." On April 3, 2024, Raytheon published a job posting for a Financial Analyst (REMOTE) position with a salary range of $53,000 to $103,000, for which the only "Basic Qualifications" were U.S. citizenship and a "Bachelor's degree and 12 months or less of relevant professional work experience (excluding internships)." On February 16, 2024, Raytheon published a job posting for a Systems Engineer I (Flight Controls) (Hybrid) position with a salary

range of $53,000 to $103,000, for which the only "Basic Qualifications" were U.S. work authorization and a "Bachelor's degree and 12 months or less of relevant professional work experience (excluding internships)." And on January 29, 2024, Raytheon published a job posting for a Business Analyst for Engineering Services (Onsite) with a salary range of $53,000 to $103,000, for which the only "Basic Qualifications" were U.S. citizenship, permanent residency, or refugee status and a "Bachelor's degree and 12 months or less of relevant professional work experience (excluding internships)." Many of the Recent Graduate Positions have been for onsite positions in Massachusetts, including at Raytheon's manufacturing facilities in this District, or for remote positions that could be staffed by workers residing in any state.

55.     Throughout the Relevant Time Period, these types of job postings and recent college or graduate school graduation requirements, and Raytheon's related pattern or practice of discrimination, have achieved a younger workforce for Raytheon's Recent Graduate Positions and more generally. In fact, in May 2023, Raytheon reported that 25% of all new hires were new or recent college graduates. Among the Recent Graduate Positions, it is likely that nearly all of Raytheon's hires have been under 40 years old during the Relevant Time Period.

56.     Even an ongoing labor shortage and need for qualified personnel has not deterred Raytheon from continuing to limit Recent Graduate Positions to recent college graduates. Since at least 2020, Raytheon has disclosed in Securities and Exchange Commission ("SEC") filings and quarterly earnings calls that it is facing labor shortages that, in turn, impact the Company's financial results and could "seriously harm [Raytheon's] business."[5]

---

[5] *See* Raytheon Technologies (RTX) Q3 2021 Earnings Call Transcript (Oct. 26, 2021), https://www.fool.com/earnings/call-transcripts/2021/10/26/raytheon-technologies-corp-rtx-q3-2021-earnings-ca/ ("And we're also seeing, of course, labor shortages in our supply chain, which is also slowing down input.  And I think that's going to be a continuing problem into next year.")

57.     In the Company's 2020 Annual Report, filed on Form 10-K with the SEC ("2020 10-K"), Raytheon disclosed:

> Due to the specialized nature of our business*, our future performance is highly dependent upon* . . . *the hiring of new qualified technical, manufacturing, marketing, sales and management personnel for our operations.* Our defense business in particular requires qualified personnel with security clearances due to our classified programs. ***Competition for personnel is intense*** and we may not be successful in attracting, training or retaining qualified personnel with the requisite skills or security clearances . . . . Further, we have experienced and may continue to experience personnel reductions as a result of the COVID-19 pandemic's impact on our business and a significant percentage of our current workforce is nearing or eligible for retirement. ***To the extent that we lose experienced personnel, it is critical that we develop other employees, hire new qualified personnel and successfully manage the transfer of critical knowledge.*** In addition, new qualified personnel may have different expectations from our current workforce, which could result in difficulties attracting and retaining new employees. ***Loss of key employees, failure to attract new qualified employees or adequately train them, delays in receiving required security clearances, or delays in hiring key personnel could seriously harm our business***.[6]

Nearly identical language was included in Raytheon's 2021 10-K.[7]

58.     Raytheon's 2022 10-K includes similar language to the 2020 and 2021 10-Ks, and also adds:

> Current macroeconomic, industry and labor market conditions have exacerbated an already highly competitive market for hiring and retaining employees with relevant qualifications and experience. ***There is an ongoing labor shortage, particularly for highly qualified personnel including engineers, skilled laborers and security clearance holders.*** Labor market trends also include high attrition and wage inflation, and some candidates and new personnel may have different expectations from our current workforce. As a result of the above factors, ***we have experienced, and expect to continue to experience, significant difficulties in hiring and retaining personnel with relevant qualifications and experience, which has negatively impacted, and may continue to negatively impact, our results of operations, financial condition and liquidity***.[8]

---

[6] Raytheon's 2020 10-K, https://investors.rtx.com/static-files/e2c0b07c-9373-470f-9172-01c1522aa510.

[7] Raytheon's 2021 10-K, https://investors.rtx.com/static-files/7784efe1-cfe4-4061-a3d2-db4e6fab6f11.

[8] Raytheon's 2022 10-K, https://investors.rtx.com/static-files/324589ff-71a3-4ba0-8c29-f9199d37fdf2.

59.     In Q3 2022, Raytheon's Chief Executive Officer ("CEO") and Chairman provided more insight into Raytheon's efforts to hire and retain sufficient personnel:

> On labor availability, it's a challenge. Everybody sees it, especially in the supply chain. And I think what's interesting for -- at RTX is we have hired 27,000 people in 2022. That's about 3,000 a month since the beginning of the year. Our total headcount today is over 180,000. The challenge though is we would need about 10,000 more people. So a lot of work yet to do on labor.[9]

60.     Despite Raytheon's ongoing difficulty in retaining and hiring sufficient qualified personnel and the negative impact on the Company's financial prospects, Raytheon continues to exclude older workers from many positions by requiring applicants to be recent college or graduate school graduates, regardless of their qualifications, and publish discriminatory job postings that deter older workers from applying to Raytheon.

### Raytheon's Discriminatory Hiring Policies Have Harmed Mr. Goldstein and the Class and Collective He Seeks to Represent.

61.     Mark H. Goldstein graduated from American University with a bachelor's degree in economics in 1978 and a master's degree in business administration ("MBA") in 1980.

62.     Since 1980, Mr. Goldstein has gained extensive experience in cybersecurity, technology, risk management, security engineering, project management, customer support, sales, marketing, engineering, business, and consulting, with positions at Northern Telecom/Nortel, America Online, and Websense.

63.     Mr. Goldstein has worked for a contractor for the U.S. Department of Homeland Security, and previously held a federal government security clearance.

---

[9] Raytheon Technologies (RTX) Q3 2022 Earnings Call Transcript (Oct. 25, 2022), https://www.fool.com/earnings/call-transcripts/2022/10/25/raytheon-technologies-rtx-q3-2022-earnings-call-tr/.

64.     Mr. Goldstein also has a Certified Information Security Systems Professional certificate and a Certified Information Privacy Professional certificate.

65.     Between 2019 and 2023, Mr. Goldstein has applied for at least 7 Recent Graduate Positions at Raytheon for which he was qualified, but Raytheon has never interviewed him, offered him employment, or hired him.

66.     Mr. Goldstein has been genuinely interested in each of the positions he applied for at Raytheon and has been willing to relocate, if necessary, or work remotely.

67.     When Mr. Goldstein applied to work at Raytheon, Raytheon required Mr. Goldstein to include and confirm the year and month of his college graduation in order to submit each of his applications.

68.     As described below, Mr. Goldstein was qualified for each position for which he applied.  The only "qualifications" that he did not meet were those requiring him to be a recent college graduate or to have no more than 12 or 24 months of relevant work experience.

69.     On May 6, 2019, Mr. Goldstein applied for a Raytheon position advertised as "Cyber Defense Technologist II," Requisition Number 139839BR.  The position required applicants to be "currently enrolled or a recent graduate (within 18 months) with a Master's degree in Computer Science, Information System Management, Information Technology, Criminal Justice, Business or other relevant degree."  The position also required the ability to obtain a Department of Defense security clearance, the ability to obtain an Information Security Professional Certification commensurate with the Department of Defense 8570.1-M Level 2 requirements within 6 months of hiring, and experience working with and/or supporting computer technologies.

70.    By requiring that applicants be currently enrolled in or recently graduated from a master's degree program, Raytheon explicitly stated a preference or limitation for hiring younger workers and discrimination against older workers. In addition, Raytheon intentionally discriminated against older workers by establishing this recent graduate requirement for the position and/or applied a facially neutral policy that disproportionately excluded older workers from the position.

71.    Mr. Goldstein met all the qualifications for the Cyber Defense Technologist II position.  He has a BA in Economics and an MBA and thus has a Master's in "Business or other relevant degree." In addition, in his application, Mr. Goldstein explained that he previously held a security clearance and would have no issue in obtaining one again.  He also has a professional certification in Certified Information Security Systems Professional (CISSP), which exceeds the DoD 8570.1-M level 2 certification requirement in the posting, as well as extensive experience working with and supporting computer technologies.

72.    Raytheon rejected Mr. Goldstein for the Cyber Defense Technologist II position on May 8, 2019 without inviting Mr. Goldstein to interview for the position.

73.    Raytheon did not consider Mr. Goldstein's qualifications for the position and rejected Mr. Goldstein solely because he was not currently enrolled in or recently graduated from a master's degree program.

74.    Even though Mr. Goldstein was qualified for the role, upon information and belief, Raytheon hired a substantially younger individual who was not significantly more qualified or experienced than Mr. Goldstein.

75.    The EEOC found on March 30, 2021 that Mr. Goldstein "was denied the opportunity to be considered for the [Cyber Defense Technologist II] position[] he had applied for because of his age, and not because he did not meet the minimum qualifications required for the job[]."

76.     Upon information and belief, many other older workers were also qualified for this position, but either did not apply because of the job posting's preference for younger workers or they did apply but were not considered, interviewed, or hired because of their age. In fact, for the individuals who did not apply, it would have been futile for them to have applied, because they were not recent graduates.

77.     On May 15, 2019, Mr. Goldstein applied for a position advertised by Raytheon as "Program Cost Schedule Analyst I (New Grad Opportunity)," Requisition Number 139244BR. The position required a "Bachelor's Degree in Business Administration, Finance, Accounting, or business related major in the past 18 months or by spring of 2019."

78.     By requiring applicants to have obtained a bachelor's degree within the last 18 months (or to be enrolled in a degree program with an expected graduation date in the next few months), Raytheon explicitly stated a preference for or limitation to hiring younger workers and discrimination against older workers. In addition, Raytheon intentionally discriminated against older workers by establishing this recent college graduate requirement for the position and/or applied a facially neutral policy that disproportionately excluded older workers from the position.

79.     Mr. Goldstein was qualified for the Program Cost Schedule Analyst I position. Among his other qualifications, he holds a BA in Economics and an MBA.

80.     Raytheon summarily rejected Mr. Goldstein for the Program Cost Schedule Analyst I position on May 15, 2019 without inviting Mr. Goldstein to interview for the position.

81.     Raytheon did not consider Mr. Goldstein's qualifications for the position and, instead denied his application solely because he was not a recent (or soon to be) college graduate.

82.     Even though Mr. Goldstein was qualified for the role, upon information and belief, Raytheon hired a substantially younger individual who was not significantly more qualified or

experienced than Mr. Goldstein.

83.     The EEOC found on March 30, 2021 that Mr. Goldstein "was denied the opportunity to be considered for the [Program Cost Schedule Analyst] position[] he had applied for because of his age, and not because he did not meet the minimum qualifications required for the job[]."

84.     Upon information and belief, many other older adults were also qualified for this position, but either did not apply, because of the job posting's preference for a younger worker, or they did apply but were not considered, interviewed, or hired because of their age. In fact, for such older individuals who did not apply, it would have been futile for them to have applied, because they were not recent graduates.

85.     On or around February 4, 2021, Mr. Goldstein applied for a position advertised by Raytheon as "Proposal Analyst I (early 2021 Start)," Requisition Number 174644BR. The advertisement for the positions read, *inter alia*, "***Great opportunity for current seniors in college or recent college graduates. If you are not a current college senior, or a recent college graduate, please visit our other opportunities at our rtx.com/careers and apply!***"

86.     The position required "a BS / BA in Finance / Business Administration / Economics / Math-Econ or Statistics [or] other related field by December 2020."

87.     By requiring applicants to be recent college graduates as a basic qualification for the Proposal Analyst I position and then directing applicants who were not current college seniors or recent graduates to apply for other positions, Raytheon explicitly stated a preference or limitation for hiring younger workers and discrimination against older workers.

88.     Mr. Goldstein met the qualifications for the Proposal Analyst I position, except that he was not a current college senior or recent graduate.

89.     Raytheon summarily rejected Mr. Goldstein for the Proposal Analyst I position without inviting Mr. Goldstein to interview for the position.

90.     On information and belief, Raytheon decided not to select Mr. Goldstein for an interview because he was not a recent college graduate and because he is an older worker.

91.     Even though Mr. Goldstein was qualified for the role, upon information and belief, Raytheon hired a substantially younger individual who was not significantly more qualified or experienced than Mr. Goldstein.

92.     Upon information and belief, many other older adults were also qualified for this position, but either did not apply because of the job posting's clear preference for a younger worker or did apply but were not considered, interviewed, or hired because of their age. In fact, for such older individuals who did not apply, it would have been futile for them to have applied, because they were not recent graduates.

93.     On or around June 1, 2021, Mr. Goldstein applied for a position advertised by Raytheon as "Financial Analyst I," Requisition Number 179782BR. The advertisement stated, *inter alia*, that the position is a "great opportunity for an early career candidate."

94.     The Financial Analyst I position required applicants to have a "Bachelor's degree in Finance, Accounting, Business Administration or similar discipline by Dec 2020, May 2021, or have graduated within 18 months' prior to start date."  The application process required applicants to upload their most recent transcripts along with their resume.

95.     By requiring applicants to obtain a bachelor's degree "by Dec 2020, May 2021, or have graduated within 18 months prior to start date," Raytheon expressed a clear preference or limitation for younger workers and discrimination against older workers.  Given the timing of the publication of the advertisement in mid-2021 and its use of recent and specific semester-based

graduation dates (December 2020 and May 2021), the advertisement communicated a requirement for applicants to be recent college graduates, i.e., those graduating in December 2020, May 2021 or within 18 months prior to the start date, but no earlier than 18 months before the start date.

96.     Mr. Goldstein met the qualifications for the Financial Analyst I position, except for the required graduation date.

97.     Raytheon did not invite Mr. Goldstein for an interview or respond in any way to Mr. Goldstein's application for the Financial Analyst I position.

98.     Upon information and belief, Raytheon did not select Mr. Goldstein for the Financial Analyst I position because he was not a recent college graduate and because he is an older worker.

99.     Even though Mr. Goldstein was qualified for the role, upon information and belief, Raytheon hired a substantially younger individual who was not significantly more qualified or experienced than Mr. Goldstein.

100.    Upon information and belief, many other older adults were also qualified for this position, but either did not apply because of the job posting's clear preference for a younger worker or did apply but were not considered, interviewed, or hired because of their age. In fact, for such older individuals who did not apply, it would have been futile for them to have applied, because they were not recent graduates.

101.    On or around March 10, 2022, Mr. Goldstein applied for a position that Raytheon advertised as "Associate, System Engineer (New Graduate)," Requisition Number 01464198. The advertisement stated that the "basic qualifications" for the position include a "bachelor's degree and less than 2 years prior relevant experience OR, in absence of a degree, 6 years of relevant experience is required."

102.    By advertising for the position as one for a "New Graduate" and then requiring applicants with college degrees to have "less than 2 years prior relevant experience," Raytheon expressed a clear preference and limitation for hiring younger workers and discrimination against older workers.

103.    Mr. Goldstein met the qualifications for the Associate, System Engineer position, except that he was not a new graduate and he exceeded the experience limitation for applicants with a bachelor's degree.

104.    Raytheon summarily rejected Mr. Goldstein for the Associate, System Engineer position without an interview on April 7, 2022.

105.    On information and belief, Raytheon rejected Mr. Goldstein for the Associate, System Engineer position because he was not a recent college graduate, because he has more than two years of relevant experience, and because he is an older worker.

106.    Even though Mr. Goldstein was qualified for the role, upon information and belief, Raytheon hired a substantially younger individual who was not significantly more qualified or experienced than Mr. Goldstein.

107.    Upon information and belief, many other older adults were also qualified for this position, but either did not apply because of the job posting's clear preference for a younger worker or did apply but were not considered, interviewed, or hired because of their age. In fact, for such older individuals who did not apply, it would have been futile for them to have applied, because they were not recent graduates and they did not have less than two years of relevant work experience.

108.    On or around August 10, 2022, Mr. Goldstein applied for a position that Raytheon advertised as "Associate, Software Engineer (New Grad)," Requisition Number 01468255. The advertisement stated that the "basic qualifications" include a "[b]achelor's degree and less than 2

years prior relevant experience OR in absence of a degree, 6 years of relevant experience is required."

109.    By advertising the position as one for a "New Grad" and then requiring applicants with college degrees have "less than 2 years prior relevant experience," Raytheon expressed a clear preference and limitation for hiring younger workers and discrimination against older workers.

110.    Mr. Goldstein met the qualifications for the Associate, Software Engineer position, except that he was not a recent graduate and he exceeded the experience limitation for applicants with a bachelor's degree.

111.    Raytheon did not invite Mr. Goldstein for an interview or in any way respond to his application for Associate, Software Engineer.

112.    On information and belief, Raytheon rejected Mr. Goldstein for the Associate, Software Engineer position because he was not a recent college graduate, because he has more than two years of relevant experience, and because he is an older worker.

113.    Even though Mr. Goldstein was qualified for the role, upon information and belief, Raytheon hired a substantially younger individual who was not significantly more qualified or experienced than Mr. Goldstein.

114.    Upon information and belief, many other older adults were also qualified for this position, but either did not apply because of the job posting's clear preference for a younger worker or did apply but were not considered, interviewed, or hired because of their age. In fact, for such older individuals who did not apply, it would have been futile for them to have applied, because they were not recent graduates and they did not have less than two years of relevant work experience.

115. On or around March 15, 2023, Mr. Goldstein applied for a position at Raytheon advertised as "Systems Engineer I – Onsite," Requisition Number 01560901. The advertisement stated that the position was for an "entry level" worker and the "basic qualifications" included a "Bachelor's Degree and less than 12 months of experience."

116. By requiring applicants have "less than 12 months of experience" as a basic qualification for the position, Raytheon expressed a clear limitation and preference to hire younger workers who were just entering the workforce and discrimination against older workers.

117. Mr. Goldstein met the qualifications for the Systems Engineer I position, except that he has more than 12 months' work experience.

118. Raytheon did not invite Mr. Goldstein for an interview or in any way respond to his application for Systems Engineer I.

119. On information and belief, Raytheon did not select Mr. Goldstein for the Systems Engineer I position because he has more than 12 months' experience and because he is an older worker.

120. Even though Mr. Goldstein was qualified for the role, upon information and belief, Raytheon hired a substantially younger individual who was not significantly more qualified and experienced than Mr. Goldstein.

121. Upon information and belief, many other older adults were also qualified for this position, but either did not apply because of the job posting's clear preference for a younger worker or did apply but were not considered, interviewed, or hired because of their age. In fact, for such older individuals who did not apply, it would have been futile for them to have applied, because they were not recent graduates and they did not have less than 12 months of relevant work experience.

122.    On or around March 15, 2023, Mr. Goldstein applied for a position that Raytheon advertised as "Systems Engineer I – New Grad – Onsite," Requisition Number 01550545.   The advertisement stated that the "basic qualifications" for the position include a "bachelor's degree and less than 2 years prior relevant experience OR in absence of a degree, 6 years of relevant experience is required."

123.    By advertising for the position as one for a "New Grad" and then requiring applicants with college degrees have less than two years' experience, Raytheon expressed a clear limitation and preference to hire younger workers and discrimination against older workers.

124.    Mr. Goldstein met the qualifications for the Systems Engineer I position, except he was not a "New Grad" and he exceeded the experience limitation for applicants with a bachelor's degree.

125.    Raytheon did not invite Mr. Goldstein for an interview or in any way respond to his application for Systems Engineer I.

126.    On information and belief, Raytheon did not select Mr. Goldstein for this Systems Engineer I position because he was not a recent college graduate, because he has more than two years of experience, and because he is an older worker.

127.    Even though Mr. Goldstein was qualified for the role, upon information and belief, Raytheon hired a substantially younger individual who was not significantly more qualified or experienced than Mr. Goldstein.

128.    Upon information and belief, many other older adults were also qualified for this position, but either did not apply because of the job posting's clear preference for a younger worker or did apply but were not considered, interviewed, or hired because of their age. In fact, for such older individuals who did not apply, it would have been futile for them to have applied, because they

were not recent graduates and they did not have less than two years of relevant work experience.

129.    Mr. Goldstein was discouraged and deterred from applying for, and did not apply to, dozens of other Recent Graduate Positions at Raytheon for which he was qualified but for the requirement that the applicants be recent graduates or applicants with less than 12 or 24 months of relevant work experience. Mr. Goldstein reasonably and correctly believed that it would be futile to apply to additional Recent Graduate Positions because Raytheon would never consider him for those positions due to his date of graduation, his work experience that exceeded 24 months, and his age, and that Raytheon typically or always enforced the recent college graduate and work experience requirements. For the same reasons, other older workers chose not to apply for Recent Graduate Positions at Raytheon, because they reasonably and correctly believed that applying would be a futile exercise and that they would never be considered or hired for those positions.

130.    Mr. Goldstein and the members of the Collective and Class have all suffered harm from Raytheon's pattern or practice challenged in this action, including the denial of an opportunity to compete for positions on equal footing, the denial of employment, the loss of income, benefits, and career advancement, stigmatic harm from seeing advertisements that indicate a preference for younger workers and discrimination against older workers and from being rejected or deterred from applying for positions that Raytheon intended for younger workers.

*          *          *

## ADEA COLLECTIVE ACTION ALLEGATIONS

131.    Plaintiff Goldstein brings this case as an ADEA collective action pursuant to 29 U.S.C. § 216(b), on behalf of himself and all individuals similarly situated: *i.e.*, individuals who (i) applied for and were denied, or were deterred from applying for, at least one Recent Graduate Position (*i.e.*, a U.S.-based non-internship position at Raytheon for which the basic qualifications included the requirement that the applicant recently graduated from college or graduate school, or is still in college or graduate school, or that the applicant had less than 24 months of work experience, as a college graduate or otherwise) for which they met the basic qualifications (ii) between October 11, 2018 through the final judgment in this action; and (iii) who were age 40 or older at the time they applied or were deterred from applying to such Recent Graduate Position at Raytheon.

132.    Raytheon has engaged in a pattern or practice of discriminating against individuals (including Mr. Goldstein) who are age 40 or older in hiring, recruitment, and other related employment decisions by failing and refusing to consider them for positions whose basic qualifications included the requirement that the applicant recently graduated from college or graduate school, or is still in college or graduate school, or that the applicant was a college graduate with less than 24 months of work experience. As a result, persons aged 40 or older have been intentionally denied consideration and hiring and have been disproportionally excluded from positions at Raytheon for which they are qualified.

133.    Raytheon's challenged recruitment, hiring, and other related policies and practices have had a significant adverse disparate impact on applicants aged 40 and older, such that qualified applicants aged 40 or older are denied employment opportunities at a disproportionately higher rate than applicants who are under 40 years old.

134.     Raytheon has also discriminated in its advertising for Recent Graduate Positions at Raytheon by indicating a preference for younger applicants and discrimination against older workers, and by imposing limits on the eligibility of older workers on the basis of applicants' age. Raytheon's discriminatory job advertisements directly deter and discourage many older workers from even applying for the Recent Graduate Positions at Raytheon, and to automatically reject workers who *do* apply for the positions.

135.     Members of the collective are ascertainable through Raytheon's records of applicants and other persons who have logged into Raytheon's careers website (or will do so in the future). First, applicants who apply via Raytheon's website must create a portal account, as do individuals who view multiple job postings. Those portal accounts likely contain records of prior applications submitted by the account holders and, at the very least, can identify the universe of individuals who applied or considered applying to Raytheon positions via the Company's website. Raytheon also receives contact and identifying information from individuals who submit applications via third-party recruitment and hiring platforms.

136.     Second, under 29 C.F.R. § 1602.14, Raytheon is required to preserve all "personnel records relevant to [a] charge [of discrimination]." "[P]ersonnel records relevant to the charge . . . would include . . . application forms or test papers completed by an unsuccessful applicant and by all other candidates for the same position as that for which the aggrieved person applied and was rejected." *Id.* Raytheon must retain these records until "final disposition of the charge or action," which means the "expiration of the statutory period within which the aggrieved person may bring an action in a U.S. District Court or, where an action is brought against an employer either by the aggrieved person, the [EEOC], or by the Attorney General, the date on which such litigation is terminated." *Id.* Mr. Goldstein's First Charge was filed in 2019 and has not yet reached final disposition because it was subject to a tolling agreement, and now is one basis for this action.

Likewise, Mr. Goldstein's Second Charge was filed in June 2023 and is still pending before the EEOC. Thus, Raytheon should have in its possession all personnel records and application materials for Mr. Goldstein and "all other candidates" for the Recent Graduate Positions since at least 300 days before the First Charge in 2019 or even earlier. Finally, Section 1602.14 requires Raytheon to retain all applications, regardless of whether a charge has been filed, for at least one year. *Id.*

## CLASS ACTION ALLEGATIONS

137.    Plaintiff brings this class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3), and (c)(4) on behalf of a nationwide class of all individuals who (i) applied for and were denied, or were deterred from applying for at least one Recent Graduate Position (*i.e.*, a U.S.-based non-internship position at Raytheon for which the basic qualifications included the requirement that the applicant recently graduated from college or graduate school, or is still in college or graduate school, or that the applicant had less than 24 months of work experience, as a college graduate or otherwise) for which they met the basic qualifications (ii) between October 11, 2018 through the final judgment in this action; and (iii) who were age 40 or older at the time they applied or were deterred from applying to such Recent Graduate Position at Raytheon.

138.    Plaintiff brings claims for a nationwide class pursuant to Massachusetts law, which cover actions and harms alleged based on policies, practices, and decisions made and effectuated within the state of Massachusetts that adversely affect applicants or employees outside of Massachusetts. Plaintiff and other Class Members were injured by policies, practices, and decisions that Raytheon made and implemented in Massachusetts (whether at its former Massachusetts headquarters or other offices and locations throughout Massachusetts) with the intent and effect of discriminating against Class Members throughout the nation in hiring based on age, deterring them from applying based on age, denying them employment based on age, and otherwise denying them the opportunity to fairly compete for Recent Graduate Positions on the same terms as younger

applicants.

139.     Plaintiff brings this class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3), and (c)(4), on behalf of a subclass of all individuals who (i) applied for and were denied, or were deterred from applying for at least one Recent Graduate Position (*i.e.*, a non-internship position whose basic qualifications included the requirement that the applicant recently graduated from college or graduate school, or is still in college or graduate school, or that the applicant was a college graduate with less than 24 months of relevant work experience) located Virginia for which they met the basic qualifications at Raytheon or lived in Virginia when they applied, were denied, or were deterred from applying for at least one Recent Graduate Position (ii) between October 11, 2018 through the final judgment in this action, and (iii) who were age 40 or older at the time they applied, or were deterred from applying, to such position at Raytheon.

140.     Mr. Goldstein reserves the right to amend the definition of the class and subclass described above based on discovery and other legal or factual developments.

141.     Mr. Goldstein is a member of the class and subclass he represents.

**Rule 23(a) is satisfied.**

142.     The members of the Class and Subclass identified herein are so numerous that joinder of all members is impracticable. As of December 31, 2023, Raytheon employed approximately 185,000 employees worldwide with 70% of them in the United States.  Although Mr. Goldstein does not know the precise number of applicants and deterred applicants for the Recent Graduate Positions age 40 or older at Raytheon, the number is far greater than can be feasibly addressed through joinder.

143.    There are questions of law and fact common to the Class and Subclass, and these questions predominate over any questions affecting only individual members.  Common questions include, among others:

(a)  whether Raytheon unlawfully intentionally discriminates against applicants and deterred prospective applicants ages 40 or older in advertising, recruiting, and hiring for the Recent Graduate Positions;

(b)  whether Raytheon's policies or practices unlawfully disproportionately exclude or disadvantage and/or have excluded or disadvantaged applicants ages 40 or older for Recent Graduate Positions;

(c)  whether Raytheon's policies or practices unlawfully deter or have deterred and/or are or were likely to deter prospective applicants ages 40 or over from applying to the Recent Graduate Positions;

(d)  whether Raytheon's challenged policies or practices relating to the publication of job advertisements have unlawfully indicated a preference, limitation, specification, or discrimination based on age;

(e)  whether Raytheon's policies and practices violate the Massachusetts Fair Employment Practices Act and the Virginia Human Rights Act;

(f)  whether Raytheon's challenged policies or practices are necessary to its business operations;

(g)  whether Raytheon's challenged polices or practices reflect the company's reliance on reasonable factors other than age in filling such jobs and/or are justified by business necessity; and

(h)  whether equitable remedies, injunctive relief, compensatory damages, and punitive damages for the class are warranted.

144.    Mr. Goldstein's claims are typical of the claims of the Class and Subclass.  He asserts the same legal claims as the Class and Subclass he seeks to represent based on the same legal theories, and his claims arise from the same discriminatory practices that give rise to the claims of the Class and Subclass.

145.    Mr. Goldstein will fairly and adequately represent and protect the interests of the members of the Class and Subclass. Mr. Goldstein has retained counsel competent and experienced in complex class actions, employment discrimination litigation, and the intersection thereof,

including counsel at the AARP Foundation, Outten & Golden LLP, and Peter Romer-Friedman Law PLLC who have previously litigated collective and class actions challenging age discrimination.

**Rule 23(b)(2) Certification is Appropriate.**

146.    Class certification is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure because Raytheon has acted and/or refused to act on grounds generally applicable to the Class and Subclass as a whole. The Class and Subclass members are entitled to injunctive and declaratory relief to end Raytheon's common, uniform, unfair, and discriminatory policies and practices. Plaintiff Goldstein and the proposed Class and Subclass will seek a declaration that Raytheon has violated MFEPA and VHRA and an injunction prohibiting Raytheon from violating these statutes in the future when advertising, recruiting, and hiring employees.

**Rule 23(b)(3) Certification is Appropriate.**

147.    Class certification is also appropriate under Rule 23(b)(3) of the Federal Rules of Civil Procedure. The common questions of fact and law identified above predominate over any questions affecting only individual members of the Class or Subclass, including because all Class and Subclass members were subjected to Raytheon's common, uniform, unfair, and discriminatory policies and practices.

148.    In addition, a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Regardless of any differences among class members, all Class and Subclass Members suffered the same injury in that they were denied the opportunity to be considered for positions on equal footing with younger workers due to their age and related experience based on Raytheon's exclusionary policies and practices and they were subjected to Raytheon's discriminatory advertising regarding the Recent Graduate Positions. The Class and Subclass Members have been damaged and are entitled to recovery as a result of Raytheon's common, uniform, unfair, and discriminatory policies and practices.

149.     First, the Class and Subclass Members do not have an interest in individually controlling the prosecution of separate actions, because their individual damages are unlikely to be large enough to warrant pursuing individual litigation in court or obtaining counsel to pursue an individual action, and because the cost of litigating the action will far exceed any potential benefit for individual Class and Subclass Members. The prosecution of separate actions by individual Class and Subclass Members would also impose heavy burdens upon the courts and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the proposed Class and Subclass, including the key legal question of whether Raytheon's policies and practices constitute unlawful age discrimination. A class action would achieve substantial economies of time, effort, and expense, and would assure the uniformity of decision with respect to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

150.     Second, to date there has not been any litigation against Raytheon by the Class or Subclass Members regarding the policies or practices challenged in this case.

151.     Third, it is desirable to concentrate this litigation in a single forum, namely the District where Raytheon made the vast majority of decisions that give rise to liability in this case.

152.     Finally, there will be no difficulties in managing this case as a class action.

**Rule 23(c)(4) Certification is Appropriate.**

153.     In addition, or in the alternative, class certification is also appropriate under Rule 23(c)(4) of the Federal Rules of Civil Procedure.  A Rule 23(c)(4) "issue class" may be properly certified to resolve common questions as to the Class or Subclass, including Raytheon's liability for one or more claims.

**COUNT I**
**Discriminatory Publication or Advertising**
**Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(e)**
**On Behalf of Plaintiff and the Collective**

154.     Plaintiff incorporates the preceding paragraphs as alleged above.

155.     This claim is brought by Plaintiff on behalf of himself and the collective he represents.

156.     Plaintiff has exhausted his administrative remedies.  More than 60 days have passed since Plaintiff has filed his charges with the EEOC.

157.     The federal Age Discrimination in Employment Act ("ADEA") makes it unlawful for an employer or employment agency to print or publish or cause to be printed or published notices or advertisements that relate to employment or referral for employment by an employer or employment agency and that indicate any preference, limitation, specification, or discrimination based on age. 29 U.S.C. § 623(e). The EEOC's regulations that implement § 623(e) provide that "[h]elp wanted notices or advertisements may not contain terms and phrases that limit or deter the employment of older individuals. Notices or advertisements that contain terms such as *age 25 to 35, young, college student, recent college graduate, boy, girl,* or others of a similar nature violate the Act unless one of the statutory exceptions applies." 29 C.F.R. § 1625.4(a).

158.     Defendant Raytheon is an employer within the meaning of the ADEA, as it is engaged in an industry affecting commerce and employs 20 or more employees. 29 U.S.C. § 630(b).

159.     Plaintiff and the collective members he seeks to represent are applicants or employees (actual and/or deterred applicants or employees) within the meaning of the ADEA, as they are or were seeking employment from an employer (or were deterred from doing so) whether directly or through an employment agency. 29 U.S.C. § 630(f).

160.    Plaintiff and the collective members he seeks to represent are protected by the ADEA, as they are at least 40 years old. *See* 29 U.S.C. § 631(a).

161.    As described above, Defendant Raytheon has a pattern or practice of publishing or causing to be published notices or advertisements relating to the Recent Graduate Positions at Raytheon that indicate a preference, limitation, specification, or discrimination based on age. This pattern or practice violates the publication provision of the ADEA, 29 U.S.C. § 623(e).

162.    When Raytheon has routinely published advertisements and notices for open positions with terms like "New Grad," "New Graduate," "Recent Grad," or similar language in the title, or that state that the basic qualifications require the applicant to be a recent graduate, a soon-to-be graduate, have graduated within a recent time frame, or have less than 12 or 24 months of relevant work experience when the applicant is a college graduate, the advertisement or notice communicates that Raytheon is less interested in, or not at all interested in, recruiting or hiring older workers and that Raytheon prefers to hire younger workers who are far more likely to be recent college or graduate school graduates. Such an advertisement or notice informs the ordinary reader of the advertisement or notice and the public at large, including the Plaintiff and the collective members he seeks to represent, that Raytheon prefers to hire younger workers over older and more experienced workers in recruiting and hiring for the relevant position. Such advertisements and notices further communicate that Raytheon is limiting job opportunities to younger workers and drawing a distinction between younger and older workers in the advertising, recruiting, and hiring of employees. An ordinary reader of the advertisement or notice and the public at large would understand such advertisements and notices to express a preference, discrimination, or limitation based on age.

163.     Defendant Raytheon has known or reasonably should have known that when it published a job advertisement or notice that limits the position to workers who are recent graduates or who have less than 12 or 24 months of job experience, Raytheon is making a statement that it wants to fill the position with younger applicants.

164.     As a direct result of Raytheon's discriminatory policies and/or practices as described above, Plaintiff and the collective have suffered harm and damages including, but not limited to, lost past and future income, compensation, and benefits.

**COUNT II**
**Intentional Discrimination – Disparate Treatment**
**Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(a)**
**On Behalf of Plaintiff and the Collective**

165.     Plaintiff incorporates the preceding paragraphs as alleged above.

166.     This claim is brought by Plaintiff on behalf of himself and the collective he represents.

167.     Plaintiff has exhausted his administrative remedies.  More than 60 days have passed since Plaintiff has filed his charges with the EEOC.

168.     The ADEA makes it unlawful for an employer to fail or refuse to hire an individual or otherwise discriminate against an individual with respect to terms, conditions, or privileges of employment, or to limit or segregate or classify individuals in a way that would deprive or tend to deprive individuals of employment opportunities, or otherwise affect their status as an employee because of the individual's age. 29 U.S.C. § 623(a)(1)-(2).

169.     Specifically, ADEA § 623(a) provides that it is "unlawful for an employer" "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age," or "to limit, segregate, or classify his employees in any way which would deprive

or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age." 29 U.S.C. § 623(a)(1)-(2).

170.    Defendant Raytheon is an employer within the meaning of the ADEA, as it is engaged in an industry affecting commerce and employs 20 or more employees. 29 U.S.C. § 630(b).

171.    Plaintiff and the collective members he seeks to represent are applicants or employees (actual and/or deterred applicants or employees) within the meaning of the ADEA, as they are or were seeking employment from an employer (or were deterred from doing so) whether directly or through an employment agency. 29 U.S.C. § 630(f).

172.    Plaintiff and collective members are protected by the ADEA, as they are at least 40 years old. *See* 29 U.S.C. § 631(a).

173.    As described above, Raytheon has engaged in an intentional, companywide, and systematic policy, pattern, and/or practice of discrimination against applicants and prospective applicants ages 40 and older. Raytheon has intentionally discriminated against Plaintiff and the collective in violation of the ADEA by, among other things:

(a) Imposing and applying basic qualifications for many positions that require that the applicant recently graduated from college or graduate school, or is still in college or graduate school, or that the applicant was a college graduate with less than 24 months of work experience;

(b) publishing advertisements or notices about positions at Raytheon, including job descriptions on Raytheon's Careers website (*e.g.*, careers.rtx.com) and various job boards, stating that the basic qualifications require that the applicant recently graduated from college or graduate school, or is still in college or graduate school, or that the applicant was a college graduate with less than 24 months of work experience, and that use titles and other statements to encourage younger people to apply for certain

positions and discourage older people from applying;

(c) requiring applicants to provide age-related data, including the year and month of graduation and academic transcripts, and estimating applicants' ages through such data;

(d) intentionally discriminating against older applicants by refusing to consider, interview, or hire them when they apply for the Recent Graduate Positions;

(e) using automated systems to screen out older applicants who are not recent college or graduate school graduates or applicants with less than 12 or 24 months of work experience;

(f) targeting, filtering or otherwise limiting recruitment and hiring efforts to recent graduates;

(g) engaging in other discriminatory recruiting, hiring, and advertising practices or policies; and

(h) refusing to stop and remedy the effect of its discriminatory advertising, recruitment, and hiring policies even after the EEOC found that Raytheon's advertisements and hiring practices violated the ADEA.

174.    These Company-wide policies have the intended effect of denying Plaintiff and the collective employment opportunities, including the opportunity to compete for employment on equal footing with younger applicants, because of their age.  Raytheon's policies and practices treat older applicants (those 40 years of age and older) worse than younger applicants (those under 40) based on their age, because such advertising, recruiting, and hiring practices intentionally exclude older applicants from being eligible for the same employment opportunities as younger applicants.

175.    Upon information and belief, Raytheon has intentionally excluded older workers from Recent Graduate Positions because Raytheon prefers to hire younger workers for such positions. Raytheon knows to a substantial degree of certainty that recent graduates are likely to be

younger applicants (under 40 years of age) because 95% of college graduates are under 40 years of age. Raytheon thus has known and intended that advertising and requiring Recent Graduate Positions to be filled with recent graduates or people with less than 12 or 24 months of work experience will dramatically increase the number of younger applicants and dramatically decrease the number of older applicants for Recent Graduate Positions. Moreover, Raytheon has known and intended that its discriminatory advertising, recruiting, and hiring practices would increase the number of younger workers hired and decrease the number of older workers hired for Recent Graduate Positions.

176.     As a direct and proximate result of Raytheon's intentional discrimination, Plaintiff and similarly situated individuals have been deterred from seeking employment, denied employment, denied the fair opportunity to compete for employment, and denied fair opportunities with regard to positions, compensation, and/or employment with Raytheon.

177.     Age is not a bona fide occupational qualification for the Recent Graduate Positions.

178.     As a direct result of Raytheon's discriminatory policies and/or practices as described above, Plaintiff and the collective have suffered harm and damages including, but not limited to, lost past and future income, compensation, and benefits.

179.     The foregoing conduct constitutes illegal, intentional discrimination and unjustified disparate treatment prohibited by 29 U.S.C. § 623(a)(1)-(2).

### COUNT III
**Disparate Impact Discrimination**
**Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(a)**
**On Behalf of Plaintiff and the Collective**

180.     Plaintiff incorporates the preceding paragraphs as alleged above.

181.     This claim is brought by Plaintiff on behalf of himself and the collective he represents.

182.    Plaintiff has exhausted his administrative remedies.  More than 60 days have passed since Plaintiff has filed his charges with the EEOC.

183.    ADEA § 623(a) provides that it is "unlawful for an employer" "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age," or "to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age." 29 U.S.C. § 623(a)(1)-(2).

184.    This provision prohibits discrimination that causes disparate impact in employment, including with respect to prospective applicants or applicants for employment.

185.    Raytheon maintains discriminatory policies, patterns, and/or practices that have a significant adverse impact on applicants and prospective applicants ages 40 and older in violation of the ADEA and are not, and cannot be, justified by reasonable factors other than age.

186.    Such misconduct, includes but is not limited to the following:

(a) Imposing and applying basic qualifications for many positions that require that the applicant to be recently graduated from college or graduate school, or is still in college or graduate school, or that the applicant is a college graduate with less than 24 months of work experience;

(b) publishing advertisements or notices about positions at Raytheon, including job descriptions on Raytheon's Careers website (*e.g.*, careers.rtx.com) and various job boards, stating basic qualifications that require that the applicant recently graduated from college or graduate school, or is still in college or graduate school, or that the applicant was a college graduate with less than 24 months of work experience, and that use titles and other statements to encourage younger people to apply for certain

positions and to discourage older people from applying;

(c) requiring applicants to provide age-related data, including the year and month of graduation and academic transcripts, and estimating applicants' ages through such data;

(d) refusing to consider, interview, or hire applicants who are not recent college graduates or have more than 12 or 24 months of work experience when they apply for the Recent Graduate Positions;

(e) using automated systems to screen out older applicants who are not recent college graduates or applicants with less than 12 or 24 months of work experience;

(f) targeting, filtering or otherwise limiting recruitment and hiring efforts to recent graduates;

(g) engaging in other discriminatory recruiting, hiring, and advertising practices or policies that cannot be justified by reasonable factors other than age; and

(h) refusing to stop and remedy the effect of its discriminatory advertising, recruitment and hiring policies even after the EEOC found that Raytheon's advertisements and hiring practices violated the ADEA.

187.   The foregoing policies, patterns, and/or practices have an unlawful disparate impact on applicants and prospective applicants ages 40 and older in violation of by 29 U.S.C. § 623(a)(1)-(2).

188.   As a result of Raytheon's policies and practices, Plaintiff and similarly situated individuals have been deterred from seeking employment, denied employment, denied the fair opportunity to obtain employment, and denied fair opportunities with regard to positions, compensation, and/or employment with Raytheon.

189.   As a direct and proximate result of Raytheon's discriminatory policies and/or practices as described above, Plaintiff and the collective have suffered harm and damages including,

but not limited to, lost past and future income, compensation, and benefits.

**COUNT IV**
**Discriminatory Publication or Advertising**
**Mass. Gen. Laws ch. 151B, § 4(1E)(f)(3)**
**On Behalf of Plaintiff and the Class**

190.    Plaintiff incorporates the preceding paragraphs as alleged above.

191.    The Massachusetts Fair Employment Practices Act ("151B") makes it unlawful for an employer or employment agency to publish or print or cause to be printed or published notices or advertisements that relate to employment by an employer or employment agency that express directly or indirectly any limitation, specification, or discrimination based on age. Mass. Gen. Laws ch. 151B, § 4(1E)(f)(3).

192.    Raytheon is an employer within the meaning of 151B. *Id.* § 1.

193.    Plaintiff and Class Members are applicants and/or employees within the meaning of 151B. *Id.*

194.    Plaintiff and Class Members are protected by these statutory provisions as they are at least 40 years old. *Id.* § 1(8).

195.    Plaintiff has exhausted his administrative remedies with respect to his 151B discriminatory publication or advertising claim against the Defendant.

196.    As described above, Raytheon has a pattern or practice of engaging in discriminatory employment advertising, recruitment, and hiring by publishing job advertisements that express directly or indirectly a limitation, specification, or discrimination based on age.

197.    This pattern or practice violates the publication provision of 151B. When Raytheon publishes an advertisement or notice for an open position with terms like "New Grad" in the title and/or with a qualification that the applicant be a recent graduate, a soon-to-be graduate, or have less than 12 or 24 months of experience for college graduates, the advertisement or notice communicates

the message that Raytheon is less interested in or not interested in recruiting or hiring older workers. Such an advertisement or notice informs the ordinary reader of the advertisement and the public at large, including Plaintiff and proposed Class Members, that Raytheon has a preference for younger workers over older workers in recruiting and hiring and that Raytheon is limiting job opportunities to younger workers and drawing a distinction between younger and older workers in the advertising, recruiting, and hiring of employees. An ordinary reader of the advertisement and the public at large would, in fact, understand that this message is expressing a preference, discrimination, limitation, or specification based on age.

198.    Raytheon knows or reasonably should know that when it publishes a job advertisement that limits the position to workers who are recent or soon-to-be college graduates and/or who have less than 12 or 24 months of experience, it is making a statement that Raytheon wants to fill the position with a younger and less experienced applicant.

199.    As a direct and proximate result of Raytheon's discriminatory policies and/or practices as described above, Plaintiff and the collective have suffered harm and damages including, but not limited to, lost past and future income, compensation, and benefits.

## COUNT V
### Intentional Discrimination – Disparate Treatment
### Mass. Gen. Laws ch. 151B, § 4(1B)
### On Behalf of Plaintiff and the Class

200.    Plaintiff incorporates the preceding paragraphs as alleged above.

201.    The Massachusetts Fair Employment Practices Act makes it unlawful for "[f]or an employer in the private sector, by himself or his agent, because of the age of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual, or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification." Mass. Gen. Laws ch. 151B § 4(1B).

202.    Section 151B(1)(B) prohibits intentional age discrimination in employment, including with respect to prospective applicants or applicants for employment. *Id.*

203.    As described above, Raytheon has engaged in a pattern or practice of discriminatory employment advertising, recruitment, and hiring by excluding older workers from certain positions at Raytheon with maximum experience requirements and a preference or requirement for recent or soon-to-be college graduates.

204.    Raytheon is an employer within the meaning of 151B. *Id.* § 1.

205.    Plaintiff and Class Members are applicants and/or employees within the meaning of 151B. *Id.*

206.    Plaintiff and Class Members are protected by these statutory provisions as they are at least 40 years old. *Id.* § 1(8).

207.    Plaintiff has exhausted his administrative remedies with respect to his 151B intentional discrimination claim against the Defendant.

208.    Raytheon has intentionally discriminated against Plaintiff and the class in the following ways:

(a) Imposing and applying basic qualifications for many positions that require that the applicant recently graduated from college or graduate school, or is still in college or graduate school, or that the applicant was a college graduate with less than 24 months of work experience;

(b) publishing advertisements or notices about positions at Raytheon, including job descriptions on Raytheon's Careers website (*e.g.*, careers.rtx.com) and various job boards, stating basic qualifications that require that the applicant recently graduated from college or graduate school, or is still in college or graduate school, or that the applicant was a college graduate with less than 24 months of work experience, and that

use titles and other statements to encourage younger people to apply for certain positions and to discourage older people from applying;

(c) requiring applicants to provide age-related data, including the year and month of graduation and academic transcripts, and estimating applicants' ages through such data;

(d) refusing to consider, interview, or hire applicants who are not recent college graduates or have more than 12 or 24 months of work experience when they apply for the Recent Graduate Positions;

(e) using automated systems to screen out older applicants who are not recent college graduates or applicants with less than 12 or 24 months of work experience;

(f) targeting, filtering, or otherwise limiting recruitment and hiring efforts to recent graduates;

(g) engaging in other discriminatory recruiting, hiring, and advertising practices or policies; and

(h) refusing to stop and remedy the effect of its discriminatory advertising, recruitment, and hiring policies even after the EEOC found that Raytheon's advertisements and hiring practices violated the ADEA.

209.    This pattern or practice of discrimination challenged in this action is undertaken by Raytheon with the intent and purpose of discouraging and preventing older workers from applying for jobs with Raytheon based on their age, and with the intent of failing or refusing to hire older workers based on their age. This pattern or practice of discrimination constitutes intentional discrimination under 151B. It treats older workers (who are 40 years old or older) worse than younger workers (who are under 40 years old) in advertising, recruiting, and hiring prospective applicants for job opportunities based on their age, because Raytheon excludes older workers from receiving equal consideration for employment opportunities as younger workers.

210.   In addition, this practice limits, segregates, and classifies older workers in the advertising, recruitment, and hiring of employees in a way that deprives or tends to deprive them of employment opportunities based on age, because older workers are classified based on their age and experience, and segregated from younger workers who are preferentially and arbitrarily "eligible" for certain positions based on their work experience and graduation dates.

211.   Upon information and belief, Defendant Raytheon knows and intends that advertising open positions in such a way will increase the number of younger persons who will apply for jobs and decrease the number of older persons who will apply for jobs at Raytheon. Moreover, Raytheon knows and intends that this discriminatory advertising practice will increase the number of younger workers hired by Raytheon and decrease the number of older workers hired by Raytheon.

212.   As a direct and proximate result of Raytheon's intentional discrimination, Plaintiff and similarly situated individuals have been deterred from seeking employment, denied employment, denied the fair opportunity to obtain employment, and denied fair opportunities with regard to position, compensation, and/or employment with Raytheon.

213.   As a direct and proximate result of Raytheon's discriminatory policies and/or practices as described above, Plaintiff and the collective have suffered harm and damages including, but not limited to, lost past and future income, compensation, and benefits.

214.   Raytheon's actions constitute unlawful discrimination in violation of 151B.

**<u>COUNT VI</u>**
**Disparate Impact Discrimination**
**Mass. Gen. Laws ch. 151B, § 4(1B)**
**On Behalf of Plaintiff and the Class**

215.   Plaintiff incorporates the preceding paragraphs as alleged above.

216.   The Massachusetts Fair Employment Practices Act makes it unlawful for an employer or an employment agency to fail or refuse to hire an individual or otherwise discriminate

against an individual with respect to the terms, conditions, or privileges or employment, because of an individual's age.  Mass. Gen. Laws ch. 151B § 4.

217.    This provision prohibits discrimination that causes a disparate impact in employment, including with respect to prospective applicants or applicants for employment.

218.    Defendant Raytheon is an employer within the meaning of 151B. *Id.* § 1.

219.    Plaintiff and Class Members are applicants and/or employees within the meaning of 151B. *Id.*

220.    Plaintiff and Class Members are protected by these statutory provisions as they are at least 40 years old. *Id.* § 1(8).

221.    Plaintiff has exhausted his administrative remedies with respect to his 151B disparate impact claim against the Defendant.

222.    Raytheon maintains discriminatory policies, patterns, and/or practices that have an adverse impact on applicants and prospective applicants ages 40 and older in violation of 151 B and are not, and cannot be, justified by business necessity, including but not limited to the following: its publication of discriminatory advertisements and job notices indicating a preference, limitation, specification, or discrimination based on age and age-based proxies, including those requiring candidates to be  recent graduates and/or to have minimal work experience; its collection and use of age-related data with the effect of excluding or screening out older applicants from Recent Graduate Positions; and targeting, filtering, or otherwise limiting recruitment and hiring efforts to recent graduates and/or those with minimal work experience.

223.    As a direct and proximate result of Raytheon's intentional discrimination, Plaintiff and similarly situated individuals have been deterred from seeking employment, denied employment, denied the fair opportunity to obtain employment, and denied fair opportunities with regard to positions, compensation, and/or employment with Raytheon.

224.     As a direct and proximate result of Raytheon's discriminatory policies and/or practices as described above, Plaintiff and the collective have suffered harm and damages including, but not limited to, lost past and future income, compensation, and benefits.

**COUNT VII**
**Discriminatory Publication or Advertising**
**Va. Code Ann. § 2.2-3900, *et seq.***
**On Behalf of Plaintiff and the Subclass**

225.     Plaintiff incorporates the preceding paragraphs as alleged above.

226.     The Virginia Human Rights Act ("VHRA") makes it unlawful for an employer to print or publish, or cause to be printed or published, any notice or advertisement relating to employment by such employer that indicates any preference, limitation, specification, or discrimination based on age.  VA Code Ann. § 2.2-3905(B)(8).

227.     Raytheon is an employer within the meaning of VA Code Ann. § 2.2-3905(A).

228.     Plaintiff and the Subclass Members are protected by these statutory provisions as they are at least 40 years old. VA Code Ann. § 2.2-3905(A).

229.     Plaintiff has exhausted his administrative remedies with respect to his VHRA discriminatory publication or advertising claim against the Defendant.

230.     As described above, Raytheon has a pattern or practice of engaging in discriminatory employment advertising, recruitment, and hiring by publishing job advertisements that indicate express preferences, limitations, or discrimination on the basis of age.

231.     This pattern or practice violates the publication provision of the VHRA. When Raytheon publishes an advertisement or notice for an open position with terms like "New Grad" in the title and/or with a qualification that the applicant be a recent graduate, be a soon-to-be graduate, or have less than 12 or 24 months of experience, the advertisement or notice communicates the message that Raytheon is less interested in or not interested in recruiting or hiring older workers.

Such an advertisement or notice informs the ordinary reader of the advertisement and the public at large, including Plaintiff and proposed Class Members, that Raytheon has a preference for younger workers over older workers in recruiting and hiring and that Raytheon is limiting job opportunities to younger workers and drawing a distinction between younger and older workers in the advertising, recruiting, and hiring of employees.  An ordinary reader of the advertisement and the public at large would, in fact, understand that this message is expressing a preference, discrimination, or limitation based on age.

232.    Defendant Raytheon knows or reasonably should know that when it publishes a job advertisement that limits the position to workers who are recent or soon-to-be college graduates and/or who have less than 12 or 24 months of experience, it is making a statement that Raytheon wants to fill the position with a younger, less experienced applicant.

233.    As a direct and proximate result of Raytheon's discriminatory policies and/or practices as described above, Plaintiff and the collective have suffered harm and damages including, but not limited to, lost past and future income, compensation, and benefits.

**COUNT VIII**
**Intentional Discrimination – Disparate Treatment**
**Va. Code Ann § 2.2-3900, *et seq.***
**On Behalf of Plaintiff and the Subclass**

234.    Plaintiff incorporates the preceding paragraphs as alleged above.

235.    The VHRA makes it unlawful to fail or refuse to hire or otherwise discriminate against any individual because of such individual's age or to limit, segregate, or classify employees or applicants for employment in any way that would deprive or tend to dprive any individual of employment opportunities or otherwise adversely affect an individual's status as an employee because of such individual's age.  VA Code Ann. § 2.2-3905(B)(1).

236.    The VHRA prohibits intentional age discrimination in employment, including with respect to prospective applicants or applicants for employment.

237.    As described above, Raytheon has engaged in a pattern or practice of discriminatory employment advertising, recruitment, and hiring by excluding older workers from certain positions at Raytheon with maximum experience requirements and a preference or requirement for recent or soon-to-be college graduates.

238.    Raytheon is an employer within the meaning of VA Code Ann. § 2.2-3905(A).

239.    Plaintiff and Class Members are protected by these statutory provisions as they are at least 40 years old. VA Code Ann. § 2.2-3905(A).

240.    Plaintiff has exhausted his administrative remedies with respect to his VHRA intentional discrimination claim against the Defendant.

241.     Raytheon has intentionally discriminated against Plaintiff and the Class in the following ways:

(a) Imposing and applying basic qualifications for many positions that require that the applicant recently graduated from college or graduate school, or is still in college or graduate school, or that the applicant was a college graduate with less than 24 months of work experience;

(b) publishing advertisements or notices about positions at Raytheon, including job descriptions on Raytheon's Careers website (e.g., careers.rtx.com) and various job boards, stating basic qualifications that require that the applicant recently graduated from college or graduate school, or is still in college or graduate school, or that the applicant was a college graduate with less than 24 months of work experience, and that use titles and other statements to encourage younger people to apply for certain positions and to discourage older people from applying;

(c) requiring applicants to provide age-related data, including the year and month of graduation and transcripts, and estimating applicants' ages through such data;

(d) refusing to consider, interview, or hire applicants who are not recent college graduates or have more than 12 or 24 months of work experience when they apply for the Covered Positions;

(e) using automated systems to screen out older applicants who are not recent college graduates or applicants with less than 12 or 24 months of work experience;

(f) targeting, filtering or otherwise limiting recruitment and hiring efforts to recent graduates;

(g) engaging in other discriminatory recruiting, hiring and advertising practices or policies; and

(h) refusing to stop and remedy the effect of its discriminatory advertising, recruitment and hiring policies even after the EEOC found that Raytheon's advertisements and hiring practices violated the ADEA.

242. This pattern or practice of discrimination challenged in this action is undertaken by Raytheon with the intent and purpose of discouraging and preventing older workers from applying for jobs with Raytheon based on their age, and with the intent of failing or refusing to hire older workers based on their age. This pattern or practice of discrimination constitutes intentional discrimination under the VHRA. It treats older workers (who are 40 years old or older) worse than younger workers (who are under 40 years old) in advertising, recruiting, and hiring prospective applicants for job opportunities based on their age, because Raytheon excludes older workers from receiving equal consideration for employment opportunities as younger workers.

243.     In addition, this practice limits, segregates, and classifies older workers in the advertising, recruitment, and hiring of employees in a way that deprives or tends to deprive them of employment opportunities based on age, because older workers are classified based on their age and experience, and segregated from younger workers who are preferentially and arbitrarily "eligible" for certain positions based on their work experience and graduation dates.

244.     Upon information and belief, Defendant Raytheon knows and intends that advertising open positions in such a way will increase the number of younger persons who will apply for jobs and decrease the number of older persons who will apply for jobs at Raytheon. Moreover, Raytheon knows and intends that this discriminatory advertising practice will increase the number of younger workers hired by Raytheon and decrease the number of older workers hired by Raytheon.

245.     As a direct and proximate result of Raytheon's intentional discrimination, Plaintiff and similarly situated individuals have been deterred from seeking employment, denied employment, denied the fair opportunity to obtain employment, and denied fair opportunities with regard to positions, compensation, and/or employment with Raytheon.

246.     As a direct and proximate result of Raytheon's discriminatory policies and/or practices as described above, Plaintiff and the collective have suffered harm and damages including, but not limited to, lost past and future income, compensation, and benefits.

<u>**COUNT IX**</u>
**Disparate Impact Discrimination**
**Va. Code Ann § 2.2-3900, *et seq.***
**On Behalf of Plaintiff and the Subclass**

247.     Plaintiff incorporates the preceding paragraphs as alleged above.

248.     The VHRA makes it unlawful to fail or refuse to hire or otherwise discriminate against any individual because of such individual's age or to limit, segregate, or classify employees or applicants for employment in any way that would deprive or tend to dprive any individual of

employment opportunities or otherwise adversely affect an individual's status as an employee because of such individual's age. VA Code Ann. § 2.2-3905(B)(1).

249.    This provision prohibits discrimination that causes a disparate impact in employment, including with respect to prospective applicants or applicants for employment.

250.    Raytheon is an employer within the meaning of VA Code Ann. § 2.2-3905(A).

251.    Plaintiff and the Class Members are protected by these statutory provisions as they are at least 40 years old. *Id.*

252.    Plaintiff has exhausted his administrative remedies with respect to his VHRA intentional discrimination claim against the Defendant.

253.    Raytheon maintains discriminatory policies, patterns, and/or practices that have an adverse impact on applicants and prospective applicants ages 40 and older in violation of the VHRA and are not, and cannot be justified by business necessity, including but not limited to the following: its publication of discriminatory advertisements and job notices indicating a preference, limitation, specification, or discrimination based on age and age-based proxies, including those requiring candidates to be recent graduates and/or to have minimal work experience; its collection and use of age-related data to exclude or screen out older applicants from Recent Graduate Positions; and targeting, filtering, or otherwise limiting recruitment and hiring efforts to recent graduates.

254.    As a direct and proximate result of Raytheon's discrimination, Plaintiff and similarly situated individuals have been deterred from seeking employment, denied employment, denied the fair opportunity to obtain employment, and denied fair opportunities with regard to positions, compensation, and/or employment with Raytheon.

255.    As a direct and proximate result of Raytheon's discriminatory policies and/or practices as described above, Plaintiff and the collective have suffered harm and damages including, but not limited to, lost past and future income, compensation, and benefits.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests:

A.      An order that this action be designated as an ADEA collective action properly maintained under 29 U.S.C. § 216(b);

B.      The designation of Plaintiff Goldstein as representative of the Collective action;

C.      The designation of Plaintiff Goldstein's counsel as counsel for the Collective action;

D.      The certification the case as a class action on behalf of the proposed Class;

E.      The designation of Plaintiff Goldstein as a class representative for the Class and Subclass;

F.      The designation of Plaintiff Goldstein's counsel of record as class counsel;

G.      A declaratory judgment that the practices or policies complained of herein are unlawful and violate 29 U.S.C. §§ 621, *et seq.*, Mass. Gen. Laws ch. 151B, *et seq.*, and Va. Code Ann. § 2.2-3905, *et seq.*;

H.      A preliminary and permanent injunction against Raytheon and its partners, officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in policies, patterns, and/or practices that discriminate against Plaintiff and the class because of their age;

I.      An order that Raytheon institute and carry out policies, practices, and programs that provide equal employment opportunities for all employees regardless of age, and that Raytheon eradicate the effects of its past and present unlawful employment practices;

J.      An order appointing a monitor to ensure that Raytheon complies with the inunction provisions of any decree that the Court orders;

K.      An order retaining continuing jurisdiction over this action to ensure that Raytheon complies with such a decree;

L.     An order for front pay benefits to Plaintiff and class and collective members;

M.     Back pay (including interest and benefits) for Plaintiff and the Class and collective members;

N.     All damages sustained as a result of Raytheon's conduct, including damages for emotional distress, humiliation, embarrassment, and anguish, according to proof;

O.     Liquidated damages;

P.     Exemplary and punitive damages in an amount commensurate with Raytheon's ability to pay and to deter future conduct;

Q.     Costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

R.     Pre-judgment and post-judgment interest, as provided by law; and

S.     Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## **JURY TRIAL DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure or any similar rule or law, Plaintiff demands a trial by jury for all causes of action and issues for which trial by jury is available.

Dated:  June 11, 2024                              Respectfully submitted,

                                           ___/s/ Raymond P. Ausrotas_____
                                           Raymond  P. Ausrotas (BBO No. 640315)
                                           ARROWOOD LLP
                                           10 Post Office Square, 7th Floor South
                                           Boston, MA 02109
                                           Tel: 617-849-6200
                                           Fax: 617-849-6201
                                           rausrotas@arrowoodllp.com

- with -

Peter Romer-Friedman (*pro hac forthcoming*)
Patrick David Lopez (*pro hac forthcoming*)
PETER ROMER-FRIEDMAN LAW PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
(202) 355-6364
peter@prf-law.com
david@prf-law.com


Rebecca Rodgers (*pro hac forthcoming*)
Samantha Gerleman (*pro hac forthcoming*)
Lauren Naylor (*pro hac forthcoming*)
William Alvarado Rivera (*pro hac forthcoming*)
Louis Lopez (*pro hac forthcoming*)
AARP Foundation Litigation
601 E Street NW
Washington, DC 20049
(202) 434-2064
rrodgers@aarp.org
sgerleman@aarp.org
lnaylor@aarp.org
warivera@aarp.org
llopez@aarp.org

Amy Shulman (Mass. Bar No. 633396)
Adam T. Klein (*pro hac forthcoming*)
Moira Heiges-Goepfert (*pro hac forthcoming*)
Chauniqua Young (*pro hac forthcoming*)
Outten & Golden LLP
685 Third Ave., 25th Floor
New York NY 10017
(212) 245-1000
ashulman@outtengolden.com
atk@outtengolden.com
mhg@outtengolden.com
cyoung@outtengolden.com

*Attorneys for the Plaintiff and the Proposed Class and Collective*